# EXHIBIT 1

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**SUPERIOR COURT OF CALIFORNIA**

**IN AND FOR THE COUNTY OF LOS ANGELES**   FEB 0 6 2017

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunya Bolden

| | |
|---|---|
| JONATHAN CHUANG, on behalf of himself and all others similarly situated, | Case No. **BC 649291** |
| Plaintiff, | **UNLIMITED JURISDICTION** |
| v. | **CLASS ACTION COMPLAINT** |
| DR PEPPER SNAPPLE GROUP, INC., MOTT'S, LLP, and GENERAL MILLS, INC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | 308 Jones |

Jonathan Chuang ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Dr Pepper Snapple Group Inc. ("Dr Pepper"); Mott's, LLP, a wholly owned subsidiary of Dr Pepper; and General Mills, Inc. ("General Mills"), a licensing partner, (collectively, "Mott's" or "Defendants"), demanding a trial by jury, and alleges as follows:

**By Fax**

### NATURE OF THE CASE

1.      This is a proposed class action seeking redress for Defendants' deceptive[1] practices in misrepresenting the fruit content and the nutritional and health qualities of Mott's fruit snacks (the "Fruit Snacks" or "Products").[2]

2.      During the relevant time period (the "Class Period"), Defendants engaged in a deceptive marketing campaign to convince consumers that Mott's Fruit

---

[1] The terms "deceptive," "deceive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words "mislead," "misrepresent," "untrue," "untruthful," "false," "disparage," and "unlawful."

[2] The Products at issue include (but are not limited to) Mott's Fruity Rolls; Mott's Medleys Fruit Flavored Snacks—Assorted Fruit, Assorted Fruit Plus Fiber, Berry, and Strawberry Apple. Because Defendants may change the product names or contents, there could be other Products during the Class Period.

---

1

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 12

Snacks contained significant amounts of the actual fruits and vegetables shown in the marketing[3] and on the labeling[4] of the Fruit Snacks, were nutritious and healthful to consume, and were more healthful than other children's snacks.

3. For example, Defendants' website markets the Fruit Snacks as a healthy fruit-based snack for parents to give to their children—highlighting the "real fruit and vegetable juice" content:

- "This tasty treat combines *real fruit and vegetable juice* with the fruit flavors kids love. You've finally found the *perfect after-school snack that's a win for you and your kids*,"[5] and

- "Mott's Medleys Assorted Fruit Flavored Snacks are a tasty treat *you can feel good about!*"[6]

4. Defendants' marketing campaign leads parents to believe that the Fruit Snacks are healthful fruit-based snacks suitable to give to their children.

5. The amount of actual fruits and vegetables purported to be in the Products matters to parents.

6. Despite the health halo fabricated by the Defendants, the Fruit Snacks are mostly a combination of corn syrup, sugar, and modified corn starch. They contain only minimal amounts of cheap, sugary juices, such as sugary pear and apple juice from concentrate. These Products are no more healthful than candy.

7. Two of the first three ingredients in the Fruits Snacks are added

---

[3] Variants of the words "marketing" and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television and radio commercials, Product labels, online and viral marketing, incentives, and websites.

[4] The term "labeling" encompasses other descriptive terms, including various forms of the words "labels," "labeling," "packages," and "packaging."

[5] Mott's website, Products, Fruit Snacks, Mott's Medleys Assorted Fruit, http://www.motts.com/products/39/medleys-assorted-fruit-fruit-flavored-snacks (last visited Jan. 4, 2017) (emphasis added).

[6] Mott's website, Products, Fruit Snacks, Medleys Assorted Fruit Plus Fiber, http://www.motts.com/products/41/original-assorted-fruit-fruit-flavored-snacks (last visited Jan. 4, 2017) (emphasis added).

EXHIBIT 1
Page 13

1   sweeteners. And nearly half of each serving of the Fruit Snacks consists of nothing

2   but sugar.

3         8.       Although Defendants market the Fruit Snacks as healthful and nutri-

4   tious, these Fruit Snacks are devoid of any health benefits Plaintiff and other rea-

5   sonable consumers associate with consuming fruits, vegetables, or juice from fruits

6   and vegetables.

7         9.       The amount of fruits and vegetables in the Fruit Snacks has a material

8   bearing on whether parents buy the Fruit Snacks, and how much they are willing to

9   pay for them.

10        10.      In addition, through the marketing, labeling, and overall appearance of

11  the Fruit Snacks, Defendants create the impression that the fruits and vegetables

12  named and depicted on the labeling are present in an amount greater than is actu-

13  ally the case.

14        11.      FDA regulations require Defendants to display the true percentage of

15  fruits and vegetables in the Products' name on the front label, or to include a state-

16  ment of the presence or absence of any characterizing ingredient, but Defendants

17  neglect to do so. *See* 21 C.F.R. § 102.5(b), (c).

18        12.      Because Defendants deceive consumers about the basic nature and

19  amount of fruits and vegetables in the Fruit Snacks, Defendants' Fruit Snacks are

20  misbranded under Sections 403(a) and 403(q) of the Food, Drug & Cosmetic Act

21  ("FDCA"), 21 U.S.C. §§ 343(a) and (q). Defendants cannot legally manufacture,

22  advertise, distribute, or sell the Fruit Snacks in the U.S. as they are currently la-

23  beled. *See* 21 U.S.C. § 331.

24        13.      Defendants' Fruit Snacks are similarly misbranded under California's

25  Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Cal. Health &

26  Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food

27  labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code §

28  110100(a), and provides that any food is misbranded if its labels do not conform to

EXHIBIT 1
Page 14

FDCA requirements. *See id.* § 110665; *see also* § 110670.

14.     The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765; or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

15.     Defendants have been able to sell the Fruit Snacks by deceiving Plaintiff and other reasonable consumers. Defendants represent that the Fruit Snacks: (1) contain significant amounts of the named and depicted fruits and vegetables; (2) are nutritious and healthful to consume; and (3) are more healthful than other children's snacks.

16.     Defendants' deceptions played a substantial part in influencing Plaintiff's decisions to purchase the Fruit Snacks. Plaintiff relied upon Defendants' "Made with Real FRUIT" and "Made with Real FRUIT & VEGETABLE [or "VEGGIE"] Juice" claims prominently displayed on the front and back of the Fruit Snacks' packages. If Plaintiff had known the true fruit and vegetable content, as well as the true nutritional and health qualities of the Fruit Snacks, he would not have purchased the Fruit Snacks.

17.     Defendants' deceptive statements regarding the Fruit Snacks violate state and federal law. Plaintiff asserts claims on behalf of himself and on behalf of all purchasers of the Fruit Snacks for Defendants' breach of express warranty; unjust enrichment; and under California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 15

# PARTIES

## Plaintiff

18.     Plaintiff Jonathan Chuang ("Plaintiff," "Plaintiff Chuang," or "Mr. Chuang") is a citizen of California. He resides in Los Angeles County, California, and bought Defendants' products in Los Angeles County. During the Class Period, Plaintiff Chuang purchased Defendants' Fruit Snacks for himself and his family.

19.     Plaintiff Chuang wished to purchase healthful snacks for himself and his family. When Plaintiff Chuang saw Defendants' misrepresentations prior to and at the time of purchase, he relied on Defendants' representations and claims that the Fruit Snacks contained significant amounts of the actual fruits and vegetables. Mr. Chuang also relied upon the marketing and labeling of the Products, which Defendants emphasized to be more nutritious and healthful than other children's health snacks.

20.     Plaintiff Chuang typically purchased Mott's Medleys Assorted Fruit Snacks every few months from the Ralph's Grocery located at 160 North Lake Avenue, Pasadena, CA 91101. Plaintiff Chuang suffered injury because he relied on Defendants' misrepresentations and would not have purchased the Fruit Snacks had Defendants not made misrepresentations in the Products' marketing and labeling. In the future, if Mr. Chuang knew that the Products had been changed to conform to the representations on their labels, e.g., that the Products actually were as depicted and represented, he would continue to purchase the Fruit Snacks. At present, however, Mr. Chuang cannot be confident that the marketing and labeling of the Products is, and will be, truthful and non-deceptive.

## Defendants

21.     Defendant Dr Pepper Snapple Group, Inc. ("Dr Pepper") is a corporation organized under the laws of Delaware, with its principal place of business at 5301 Legacy Drive, Plano, Texas, 75024. Dr Pepper is in the business of developing, manufacturing, distributing, and selling beverages and snack products under

5

EXHIBIT 1
Page 16

various brands, including Mott's. Dr Pepper has done and continues to do business in this county.

22.     Defendant Mott's, LLP operates as a subsidiary of Dr Pepper. Mott's, LLP is organized under the laws of Delaware, with its principal place of business in Rye Brook, New York. Mott's, LLP is a nationally and internationally prominent maker of fruit snacks, applesauce, juices, fruit rolls, and fruit snacks with juicy centers. Mott's is a registered trademark of Mott's, LLP, used under license.

23.     Defendant General Mills, Inc. ("General Mills") is organized under the laws of Delaware, with its principal place of business in Minneapolis, Minnesota. General Mills produces, manufactures, markets, and distributes various food products under numerous well-known brands. General Mills produces, markets, distributes, and licenses the Fruit Snacks under the authority of Dr Pepper and Mott's, LLP.

24.     At all relevant times, Defendants acted in concert and marketed, packaged, and sold the Fruit Snacks to consumers throughout the United States.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over all causes of action Plaintiff asserts pursuant to California Constitution, Article VI, Sec. 10, because this case involves causes of action not given by statute to other trial courts.

26.     Venue is proper in this county pursuant to California Code of Civil Procedure Section 395 because Defendants do business throughout this county, Plaintiff Chuang purchased the Fruit Snacks in this county, and Plaintiff Chuang resides in this county.

## GENERAL ALLEGATIONS

27.     Consumers increasingly and consciously seek out healthful foods and snacks—placing value on healthful fruit- and vegetable-based snacks that contain less added sugar. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease and improving health and wellness

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 17

for themselves and their families.

28.    Scientific data show that it is difficult to meet nutritional needs while staying within calorie requirements if a person consumes more than 10 percent of his or her daily calories from added sugar.[7] Scientific evidence indicates that excess sugar contributes to numerous chronic health problems such as heart disease and type 2 diabetes.[8] Parents who want more healthful options seek to purchase snack products for their children that contain less added sugar.

29.    Defendants employ deceptive practices in order to capitalize on consumers' desire to purchase more healthful snacks and snacks that contain more fruit and vegetables and less added sugar.

30.    Defendants boast that Mott's is the "#1 branded apple juice and #1 apple sauce brand in the U.S."[9] In Dr Pepper's 2013 Annual Report, Defendants acknowledge that consumers rely on Defendants' reputation as a leader in the industry: "We love our brands like a mom loves her kids, so we understand wanting the best for them. That's why we're pleased that we can provide mom with Mott's, the No. 1 branded juice and sauce trademark, and plenty of packaging options to accommodate her family's lifestyle."[10]

31.    The trademarked name "Mott's" is one of the most respected and well-known names in the world when it comes to 100% fruit juice and apples. Plaintiff and other reasonable consumers trust the Mott's name when it comes to expecting healthful, fruit-based food for their children.

32.    Indeed, Defendants emphasize this reputation on the labeling of their

---

[7] Susan Mayne, "Putting Added Sugars Into Context for Consumers," *FDA Voice*, Food and Drug Admin, http://blogs.fda.gov/fdavoice/index.php/2015/07/putting-added-sugars-into-context-for-consumers/ (last visited Jan. 4, 2017).

[8] American Heart Ass'n, "Understanding Childhood Obesity," *available at* http://bit.ly/2aAbXLj.

[9] Dr Pepper Snapple Group 2013 Annual Report, *available at* http://investor.drpeppersnapple-group.com/download/Download+2013+Annual+Report.pdf.

[10] *Id.*

7

EXHIBIT 1
Page 18


Fruit Snacks, stating "Since 1842, Mott's has been using the delicious goodness of fruits to bring great tasting snacks to the whole family." See Illustration 1 below.

**Illustration 1**

**Mott's Medleys Fruit Snacks, Mixed Fruit**



33.    Because of Mott's trusted reputation, Defendants are able to deceive Plaintiff and other reasonable consumers about the nutritional and health qualities of the Fruit Snacks.

**Defendants Deceptively Market the Fruit Snacks.**

34.    Defendants market the Fruit Snacks as healthful and nutritious, claiming the Fruit Snacks are "the perfect after-school snack that's a win for you and

8

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 19

your kids,"[11] and "Mott's Medleys are made with real fruit and vegetable juice and provide 100% of the daily value of vitamin C."[12]

35.    Defendants emphasize their claim that the Fruit Snacks are "Made with Real FRUIT and VEGETABLE juice" and pair this claim with images of the characterizing fruit and vegetables. Defendants also represent the Fruit Snacks are healthful and contain 100% daily value of vitamin C. See Illustration 2 below.

### Illustration 2

### Mott's Medleys Fruit Snacks, Strawberry Apple



### Ingredients:

Fruit and Vegetable Juice Blend from Concentrate (**pear, apple, carrot**), **Corn Syrup, Sugar, Modified Corn Starch**. Contains 2% or less of: Fruit Pectin, Citric Acid, Vitamin C (**ascorbic acid**), Dextrose, Sodium Citrate, Vege-table and Fruit Juice Added for Color, Malic Acid, Sun-flower Oil*, Potassium Citrate, Natural Flavor, Carnauba

---

[11] Mott's website, Products, Fruit Snacks, Medley Assorted Fruit, http://www.motts.com/prod-ucts/39/medleys-assorted-fruit-fruit-flavored-snacks (last visited Jan. 4, 2017).

[12] General Mills Mott's Medleys Press Release, http://bit.ly/2aeeoyU (last visited Jan. 4, 2017).

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 20

Wax. *Adds A Trivial Amount Of Fat

36.    The labeling of Defendants' Strawberry Apple Fruit Snacks, for ex-
ample, prominently displays pictures of whole apples, ripe pears, and fresh carrots
next to the large "Made with real FRUIT and VEGETABLE juice" claim.

37.    But Defendants' Strawberry Apple Fruit Snacks contain mostly sugar
and absolutely no strawberries at all. And the Fruit Snacks contain 100% daily
value of vitamin C only thanks to the improper addition of ascorbic acid.

38.    Defendants employ these same deceptive claims throughout their mar-
keting campaign and emphasize the vitamin C content throughout the marketing
and labeling of the Fruit Snacks.

**Illustration 4**

**Mott's Fruit Snacks, Assorted Fruit**



**Mott's® Medleys Fruit Flavored Snacks - Assorted Fruit**

This tasty treat combines real fruit and vegetable juice with the fruit flavors kids love. You've finally found the perfect after-school snack that's a win for you and your kids! Mott's Medleys fruit flavored snacks are made with natural flavors and colors from natural sources and gives you 100% of your daily value of Vitamin C. Available in 10 count and 24 count packages.

**Nutrition Facts**
Serving Size 1 pouch (23g)
Servings Per Container 80

Amount Per Serving
Calories 80     Calories from Fat 0

| | % Daily Value* |
|---|---|
| Total Fat 0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 30mg | 1% |
| Total Carbohydrate 19g | 6% |
| Sugars 10g | |
| Protein 0g | |

Vitamin A 4%  •  Vitamin C 100%
Not a significant source of dietary fiber, calcium and iron.

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

39.    Plaintiff and other reasonable consumers rely on Defendants' material
representations when they purchase the Fruit Snacks—believing that the Fruit

10

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 21

1  Snacks are healthful and made with significant amounts of the fruits and vegeta-

2  bles depicted in the marketing and labeling of the Fruit Snacks.

3      40.    Defendants violated the trust of Plaintiff and class members because

4  the Fruit Snacks are not the fruit/vegetable-packed healthful snacks that their mar-

5  keting and labeling represent them to be.

6  **The Fruit Snacks Are Not Healthful and Do Not Contain Significant Amounts**
**of the Fruits and Vegetables Depicted.**
7

8      41.    Defendants' claims about the fruit and vegetable content and the nutri-

9  tional qualities and healthfulness of the Fruit Snacks deceive Plaintiff and other

10  reasonable consumers. Throughout Defendants' marketing and labeling of the Fruit

11  Snacks, Defendants emphasize the Products' fruits and vegetable content and vita-

12  min C content. But these Fruit Snacks are not healthful, do not contain significant

13  amounts of fruits or vegetables, and only contain any notable vitamins thanks to

14  improper fortification (not thanks to the fruit or vegetable content, as reasonable

15  consumers may assume). Some of the fruits highlighted in Defendants' marketing

16  and labeling—like strawberries—do not even appear in the Fruit Snacks at all. In-

17  stead, the Fruit Snacks contain mostly added sweeteners and highly processed fill-

18  ers.

19      42.    To illustrate, the marketing and labeling for the Berries Fruit Snacks

20  prominently feature depictions of berries, but the Product mostly contains apple

21  juice from concentrate, pear juice from concentrate, and carrot juice from concen-

22  trate. The marketing and labeling for the Strawberry Apple Fruit Snacks promi-

23  nently feature depictions of strawberries, but the Products mostly contain apple

24  juice from concentrate, pear juice from concentrate, and carrot juice from concen-

25  trate.

26      43.    The Berries Fruit Snacks and the Strawberry Apple Fruit Snacks, like

27  the other Fruit Snacks, contain far more added sugar than fruits or vegetables. The

28  fruit- and vegetable-type ingredients—on which Defendants base their marketing

11

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 22

1   and labeling—are nothing more than a small amounts of pear, apple, and some-
2   times carrot juice from concentrate.

3        44.    The Fruit Snacks lack any naturally occurring vitamins that would
4   come from significant amounts of fruit or vegetable ingredients.

5        45.    All but one variety of the Fruit Snacks do not provide any dietary fi-
6   ber, a key substance found in fruits and vegetables that is essential for good health.
7   And the Fruit Snacks Plus Fiber variety contains soluble corn fiber—not fiber from
8   the fruit or vegetable content of the Fruit Snacks, as consumers expect.

9        46.    Defendants' addition of vitamin C to the Fruit Snacks in order to mar-
10  ket the Snacks as containing "100% DV Vitamin C" violates the Food and Drug
11  Administration's ("FDA") Fortification Policy.[13] The FDA prohibits fortification
12  of "sugars[] or snack foods" that "could result in deceptive or misleading claims
13  for certain foods."[14]

14       47.    Defendants are able to make their misleading representations that
15  these sugary snacks are nutritious, vitamin-rich foods only because they fortify the
16  Fruit Snacks with vitamin C in contravention of FDA policy.[15]

17       48.    Defendants' marketing and labeling deceived Plaintiff and other rea-
18  sonable consumers into believing that the Fruit Snacks contain vitamin C due to
19  the Products' fruit and vegetable content. Unfortunately for consumers, the syn-
20  thetic vitamin C that Defendants add to the Fruit Snacks does not provide the same
21  health benefits as vitamins obtained by eating fruits and vegetables.[16] This is one of
22

[13] "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify . . . sugars; or snack foods such as candies . . . ." 21 C.F.R. § 104.20(a).

[14] *Id.*

[15] The Assorted Fruit Snacks ingredients list includes "Vitamin C (ascorbic acid)."

[16] *See, e.g.*, Rui Hai Liu, "Health Benefits of Fruits and Vegetables are from Additive and Syner-gistic Combinations of Phytochemicals," 78 Am. J. Clin. Nutr. 517S, 517S–520S, at 518S (2003); Inst. of Medicine, Food and Nutrition Board, Dietary Reference Intakes for Vitamin C, Vitamin E, Selenium, and Carotenoids, Nat'l Academy Press (2000).

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 23

the reasons the 2015 Dietary Guidelines recommend obtaining nutrients from food and not added vitamins, and advocate "achieving healthy dietary patterns through healthy food and beverage choices rather than with nutrient or dietary supplements except as needed."[17]

49.     In short, Defendants' Fruit Snacks contain very little of the fruits or vegetables Defendants highlight in order to sell the Fruit Snacks to consumers. Yet Defendants represent to Plaintiff and other reasonable consumers that the Fruit Snacks are healthful despite the fact that the Fruits Snacks are made in large part with apple, pear, and carrot juices, which are similar to empty-calorie sugar syrup, along with corn syrup, sugar, and modified cornstarch. Despite the limited ingredients derived from actual fruit, Defendants market the Fruit Snacks as though they do contain the named and depicted fruit in substantial amounts.

50.     This deceptive practice is well-recognized, and the Center for Science in the Public Interest has been outspoken in its criticism of fruit snacks:

> By shaping sugar, wax or gelatin, artificial colorings and flavorings, and sometimes a bit of fruit juice or fruit puree into the form of a cartoon character, companies created a new category of food that they market to busy parents as a healthy snack. Thus, candy is marketed as a fruit substitute and has become a regular addition to many lunchboxes.[18]

51.     Defendants are able to sell the Fruit Snacks to consumers by deceiving consumers about the healthfulness and nutrient content of the Fruit Snacks—thus distinguishing the Fruit Snacks from competitors' products. Defendants are motivated to deceive consumers for no other reason than to make a profit and to take away market share from competing companies.

52.     Defendants convey to parents that their Fruit Snacks are a healthful

---

[17] *Available at* http://www.health.gov/dietaryguidelines/2015-scientific-report/PDFs/04-Integration.pdf.

[18] CSPI website, https://cspinet.org/temptation-checkout (last visited Jan. 4, 2017).

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 24

1   snack for their children, when in fact the Fruit Snacks are essentially candy—con-

2   taining added sugars and no significant amount of real fruit or dietary fiber, and

3   containing vitamin C only due to improper fortification. Thus, stating that the Fruit

4   Snacks are made with "Real FRUIT and VEGETABLE juice," and representing

5   that they are beneficial to consumers' health, is misleading and deceptive.

6   **The Fruit Snacks Are Misbranded.**

7       53.     Under FDCA section 403, a food is "misbranded" if "its labeling is

8   false or misleading." 21 U.S.C. §§ 343(a).

9       54.     The amount of fruit in the Fruit Snacks has a material bearing on price

10  and consumer acceptance. Moreover, Defendants' marketing and labeling of the

11  Fruit Snacks—including the imagery of certain fruits—creates the erroneous im-

12  pression that the fruit depicted in the Products' marketing and labeling is present in

13  an amount greater than is actually the case. Thus, Defendants are required to dis-

14  play the true percentage of fruits in the product name on the front label, pursuant to

15  21 C.F.R. § 102.5. Defendants violate this requirement.

16      55.     Because Defendants fail to reveal the basic nature and characterizing

17  properties of the Fruit Snacks (specifically, the true fruit and vegetable content),

18  Defendants' Fruit Snacks are not only sold with misleading labeling but also mis-

19  branded under Section 403(a) of the FDCA, 21 U.S.C. § 343(a), and cannot be le-

20  gally manufactured, advertised, distributed, or sold in the United States as they are

21  currently labeled. *See* 21 U.S.C. § 331.

22      56.     Similarly, the Fruit Snacks are misbranded under California's Sher-

23  man Law, Cal. Health & Safety Code §§ 109875-111915. The Sherman Law ex-

24  pressly incorporates the food labeling requirements set forth in the FDCA, *see* Cal.

25  Health & Safety Code § 110100(a), and provides that any food is misbranded if its

26  nutritional labeling does not conform to FDCA requirements. *See id.* § 110665; *see*

27  *also id.* § 110670.

28      57.     The Sherman Law further provides that a product is misbranded if its

14

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 25

labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765; or to receive in commerce any food that is misbranded, or deliver or proffer it for delivery, *id.* § 110770.

58.     By misrepresenting the basic nature and characterizing properties of the Fruit Snacks, Defendants violate these federal and state regulations and mislead Plaintiff and consumers alike.

## CLASS ALLEGATIONS

59.     Plaintiff brings this action as a statewide class action pursuant to section 382 of the California Code of Civil Procedure on behalf of all persons in California who purchased Defendants' Products during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest.

60.     At this time, Plaintiff does not know the exact number of Class members, but—given the nature of the claims and the number of retail stores selling Defendants' Products—Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a.   Whether Defendants marketed, packaged, or sold the Products to
         Plaintiff and those similarly situated using false, misleading, or decep-

tive statements or representations, including statements or representa-
tions concerning the nutritional and health qualities of its Products;

b.  Whether Defendants omitted or misrepresented material facts in con-
    nection with the sales of its Products;

c.  Whether Defendants participated in and pursued the common course
    of conduct complained of herein;

d.  Whether Defendants' marketing, labeling, or selling of the Products as
    healthful and nutritious constitutes an unfair or deceptive consumer
    sales practice;

e.  Whether Defendants have been unjustly enriched as a result of their
    unlawful business practices;

f.  Whether Defendants' actions as described above violate the California
    Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

g.  Whether Defendants' actions as described above violate the California
    False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

h.  Whether Defendants' actions as described above violate the California
    Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*;

i.  Whether Defendants should be enjoined from continuing the above-
    described practices;

j.  Whether Plaintiff and members of the Class are entitled to declaratory
    relief; and

k.  Whether Defendants should be required to make restitution, disgorge
    profits, reimburse losses, pay damages, and pay treble damages as a
    result of the above-described practices.

62.  Plaintiff's claims are typical of those of the Class because Plaintiff,
like all members of the Class, purchased Defendants' Products in a typical con-
sumer setting and sustained damages from Defendants' wrongful conduct.

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 27

63.     Plaintiff will adequately protect the interests of the Class and has re-tained counsel who are experienced in litigating class actions. Plaintiff has no in-terests that conflict with those of the Class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.     The prerequisites to maintaining a class action for injunctive or equi-table relief are met because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

66.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of con-duct for Defendants. For example, one court might enjoin Defendants from per-forming the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even though certain Class members might not be parties to such actions.

67.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory re-lief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Express Warranty

68.     Plaintiff brings this Cause of Action individually and on behalf of the members of the Class.

69.     Defendants expressly warrant in their marketing, labeling, and promo-tion of the Fruit Snacks that the Fruit Snacks are made with "Real FRUIT and VEGETABLE juice," nutritious, and healthful to consume. These statements are untrue as detailed above. These promises of fruit and vegetable content specifically

17

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 28

relate to the goods being purchased and became the basis of the bargain.

70.   Plaintiff and members of the Class purchased the Fruit Snacks based upon the above-described express warranties made in Defendants' marketing and labeling of the Fruit Snacks. Defendants breached their express warranty by selling Fruit Snacks that did not conform to the warranties they made.

71.   Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach and deserve to be compensated for the damages they suffered. If Plaintiff and the Class had known the true facts concerning the fruit content of the Fruit Snacks, they would not have purchased the Fruit Snacks.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

72.   Plaintiff brings this cause of action individually and on behalf of members of the Class.

73.   Plaintiff and members of the Class conferred benefits on Defendants by purchasing the Fruit Snacks.

74.   Defendants have knowledge of such benefits.

75.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Fruit Snacks. Retention of those moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represent that the Fruit Snacks contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products when, in fact, the Fruit Snacks contain added sugars, lack significant amounts of real fruit, contain virtually no dietary fiber, and only contain a significant amount of vitamins due to improper fortification.

76.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust

18

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 29

1   enrichment, as ordered by the Court.

2                    **THIRD CAUSE OF ACTION**

3              **Unfair and Deceptive Acts and Practices,**
             **In Violation of the California Consumers Legal**
4                    **Remedies Act § 1750, *et seq.***

5          77.   Plaintiff Chuang brings this cause of action individually and on behalf

6   of the Class pursuant to the California Consumers Legal Remedies Act, Cal. Civ.

7   Code § 1750, et seq. (the "CLRA"). Plaintiff has provided Defendants with notice

8   pursuant to California Civil Code § 1782 and Defendants have refused to remedy

9   the matter per Plaintiff's notice. Plaintiff seeks damages in accordance with the

10  CLRA.

11         78.   Plaintiff Chuang and members of the Class are "consumers," as the

12  term is defined by California Civil Code § 1761(d), because they bought the Prod-

13  ucts for personal, family, or household purposes.

14         79.   Plaintiff Chuang, members of the Class, and Defendants have engaged

15  in "transactions," as that term is defined by California Civil Code § 1761(e).

16         80.   The conduct alleged in this Complaint constitutes unfair methods

17  of competition and unfair and deceptive acts and practices for the purpose of the

18  CLRA, and the conduct was undertaken by Defendants in transactions intended to

19  result in, and which did result in, the sale of goods to consumers.

20         81.   As alleged more fully above, Defendants have violated the CLRA by

21  falsely representing to Plaintiff Chuang and the Class certain qualities of its Prod-

22  ucts.

23         82.   As a result of engaging in such conduct, Defendants have violated

24  California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

25         83.   Pursuant to California Civil Code §§ 1780(a)(2) and (a)(5), Plaintiff

26  Chuang seeks an order of this Court that includes, but is not limited to, an order re-

27  quiring Defendants to remove language and graphics on Defendants' marketing

28  and labeling representing the Fruit Snacks as made with fruit and being healthful

                                      19
                        CLASS ACTION COMPLAINT

EXHIBIT 1
Page 30

1    and nutritious.

2        84.   Plaintiff Chuang and members of the Class may be irreparably harmed

3    or denied an effective and complete remedy if such an order is not granted.

4        85.   The unfair and deceptive acts and practices of Defendants, as de-

5    scribed above, present a serious threat to Plaintiff Chuang and members of the

6    Class.

7                        **FOURTH CAUSE OF ACTION**

8                     **Unlawful Business Acts and Practices,**
       **In Violation of California Business and Professions Code, § 17200, *et seq*.**
9
10       86.   Plaintiff Chuang brings this cause of action individually and on behalf

     of the Class.
11
         87.   Such acts of Defendants, as described above, constitute unlawful busi-
12
     ness acts and practices.
13
         88.   In this regard, Defendants' manufacturing, marketing, advertising, la-
14
     beling, distributing, and selling of the Products violate California's Sherman Law,
15
     Cal. Health & Saf. Code § 109875, *et seq*.
16
         89.   In relevant part, the Sherman Law declares that food is misbranded if
17
     its labeling is false or misleading in any particular way and further provides that it
18
     is unlawful for any person to misbrand any food. Cal. Health & Saf. Code
19
     §§ 110660, 110765.
20
         90.   The Sherman Law defines a "person" as "any individual, firm, part-
21
     nership, trust, corporation, limited liability company, company, estate, public or
22
     private institution, association, organization, group, city, county, city and county,
23
     political subdivision of this state, other governmental agency within the state, and
24
     any representative, agent, or agency of any of the foregoing." Cal. Health & Saf.
25
     Code § 109995. Defendants are corporations and, therefore, are "persons" within
26
     the meaning of the Sherman Law.
27
         91.   The business practices alleged above are unlawful under the CLRA,
28

                                          20
                          CLASS ACTION COMPLAINT

EXHIBIT 1
Page 31

Cal. Civ. Code § 1750, *et seq.*, which forbids deceptive advertising.

92.    The business practices alleged above are unlawful under California Business and Professions Code § 17200, *et seq.* by virtue of violating § 17500, *et seq.*, which forbids untrue advertising and misleading advertising.

93.    As a result of the business practices described above, Plaintiff Chuang and the Class, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

94.    The above-described unlawful business acts and practices of Defendants present a threat and reasonable likelihood of deception to Plaintiff Chuang and members of the Class in that Defendants have systematically perpetrated and continue to perpetrate such acts or practices upon members of the Class by means of misleading manufacturing, marketing, advertising, labeling, distributing, and selling of the Products.

### FIFTH CAUSE OF ACTION

**Fraudulent Business Acts and Practices,**
**In Violation of California Business and Professions Code § 17200, *et seq.***

95.    Plaintiff Chuang brings this cause of action individually and on behalf of the Class.

96.    Such acts of Defendants as described above constitute fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

97.    As more fully described above, Defendants' misleading marketing, advertising, and labeling of the Products is likely to deceive reasonable California consumers. Indeed, Plaintiff Chuang and other members of the Class were unquestionably deceived regarding the characteristics of Defendants' Prod-

EXHIBIT 1
Page 32

1  ucts, as Defendants' marketing, advertising, and labeling of the Products misrepre-

2  sents or omits the true ingredients and nutritional content of the Products. Defend-

3  ants' portrayal of the Products as made with fruit and being healthful and nutritious

4  is misleading and deceptive because the Products contain added sugars, lack signif-

5  icant amounts of real fruit, and contain no dietary fiber.

6        98.    This fraud and deception caused Plaintiff Chuang and members of the

7  Class to purchase more of Defendants' Products than they would have or to pay

8  more than they would have for Defendants' Products had they known that the

9  statements on Defendants' Products conveying that they were made from fruit and

10  were healthful are contrary to the actual ingredients of the Products.

11        99.    As a result of the business acts and practices described above, Plaintiff

12  Chuang and the Class, pursuant to California Business and Professions Code §

13  17203, are entitled to an order enjoining such future conduct on the part of Defend-

14  ants and such other orders and judgments that may be necessary to disgorge De-

15  fendants' ill-gotten gains and to restore to any person in interest any money paid

16  for Defendants' Products as a result of the wrongful conduct of Defendants.

17  <div align="center">**SIXTH CAUSE OF ACTION**</div>

18  <div align="center">**Misleading and Deceptive Advertising**</div>
19  <div align="center">**In Violation of California Business and Professions Code, § 17500,** *et seq.*</div>

20       100.    Plaintiff Chuang brings this cause of action individually and on behalf

21  of the Class for violations of California Business and Professions Code § 17500, *et*

22  *seq.* for misleading and deceptive advertising by Defendants.

23       101.    At all material times, Defendants engaged in a scheme of offering the

24  Products for sale to Plaintiff Chuang and other members of the Class by way of, *in-*

25  *ter alia*, commercial marketing and advertising, the Internet, product labeling, and

26  other promotional materials.

27       102.    Defendants' portrayal of its Products as being made from fruit and

28

<div align="center">22</div>

<div align="center">CLASS ACTION COMPLAINT</div>

EXHIBIT 1
Page 33

vegetables and as being healthful and nutritious is misleading and deceptive be-cause the Products contain high amounts of sugars and calories, and lack signifi-cant amounts of real fruit.

103.    Said advertisements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq.* in that such promotional materials were intended as induce-ments to purchase Defendants' Products and are statements disseminated by De-fendants to Plaintiff Chuang and the Class and were intended to reach members of the Class.

104.    Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

105.    In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California—via commercial marketing and ad-vertising, the Internet, Product labeling, and other promotional materials—state-ments that misleadingly and deceptively represent the Products as being made all or mostly of the fruit and vegetables represented, and being healthful and nutri-tious. Consumers, including Plaintiff Chuang, necessarily and reasonably relied on these materials concerning Defendants' Products. Consumers, including Plaintiff Chuang and the Class Members, were among the intended targets of such represen-tations.

106.    The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff Chuang and members of the Class, were and are likely to deceive reasona-ble consumers, including Plaintiff and other members of the Class, by obfuscating the real ingredients of the Products, and making misleading claims about the Prod-ucts, all in violation of the "misleading" prong of California Business and Profes-sions Code § 17500, *et seq.*

23

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 34

107.     As a result of the above violations of the "misleading" prong of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff Chuang and the other members of the Class. Plaintiff Chuang and the Class, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

## PRAYER FOR RELIEF

Plaintiff, on his own behalf and on behalf of the Class, prays for the following relief:

A.     For an order certifying the proposed Class and naming Plaintiff as Class Representative and his attorneys as Class Counsel;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.     For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 35

| | |
|---|---|
| 1 | Dated:        February 2, 2017 |

Respectfully submitted,

**RICHMAN LAW GROUP**

*[signature]*

Kim E. Richman (*Pro Hac Vice* forthcoming)
krichman@richmanlawgroup.com
Jaimie Mak (SBN 236505)
jmak@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
(415) 259-5688 (t)
(718) 228-8522 (f)

**STANLEY LAW GROUP**
Stephen Gardner (*Pro Hac Vice* forthcoming)
steve@consumerhelper.com
Amanda Howell (*Pro Hac Vice* forthcoming)
ahowell@stanleylawgroup.com
6116 N. Central Expressway
Suite 1500
Dallas, TX 75206
(214) 443-4300 (t)
(214) 443-0358 (f)

*Attorneys for Plaintiff and the Proposed Class*

25

CLASS ACTION COMPLAINT

EXHIBIT 1
Page 36

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jaimie Mak<br>SBN 236505<br>535 Mission Street<br>San Francisco, CA 94105<br>TELEPHONE NO.: (415) 259-5688    FAX NO.: (718) 228-8522<br>ATTORNEY FOR (Name): Jonathan Chuang | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br>**FEB 06 2017**<br>Sherri R. Carter, Executive Officer/Clerk<br>By _____, Deputy<br>Shauuva Bolder |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse, Central District

CASE NAME:
Chuang v. Dr Pepper Snapple Group, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC 649291 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one box** below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[✓] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [✓] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action (specify): Six
5. This case [✓] is [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

*By Fax*

Date: 2/2/2017
Jaimie Mak
_____          _____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT 1
Page 37

| SHORT TITLE: Chuang v. Dr Pepper Snapple Group, Inc., et al. | CASE NUMBER BC 649291 |
| --- | --- |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
| --- |

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
| --- | --- | --- | --- |
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Chuang v. Dr Pepper Snapple Group, Inc., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

EXHIBIT 1

| SHORT TITLE: Chuang v. Dr Pepper Snapple Group, Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 | Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 | Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 | Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 | Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 | Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 | Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☑ A6006 | Claims Involving Mass Tort | ①, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 | Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 | Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 | Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 | Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 | Abstract of Judgment | 2, 6 |
| | | ☐ A6107 | Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 | Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 | Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 | Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 | Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 | Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 | Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 | Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 | Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 | Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 | Civil Harassment | 2, 3, 9 |
| | | ☐ A6123 | Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124 | Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190 | Election Contest | 2 |
| | | ☐ A6110 | Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 | Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 | Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

EXHIBIT 1
Page 40

| SHORT TITLE: Chuang v. Dr Pepper Snapple Group, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: |
|---|---|
| CITY: | STATE: | ZIP CODE: |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ____Central____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 2/2/2017

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

EXHIBIT 1
Page 41