**RICHMAN LAW GROUP**
Jaimie Mak (Of Counsel, SBN: 236505)
Kim E. Richman (*Pro Hac Vice* forthcoming)
*krichman@richmanlawgroup.com*
81 Prospect Street
Brooklyn, NY 11201
(718) 705-4579 (office)
(718) 228-8522 (fax)

**STANLEY LAW GROUP**
Matthew J. Zevin (SBN: 170736)
*mzevin@aol.com*
10021 Willow Creek Road, Suite 200
San Diego, California 92131
(619) 235-5306 (office)
(815) 377-8419 (fax)

*Attorneys for Plaintiff and the Proposed Class*
[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CHUANG, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>DR PEPPER SNAPPLE GROUP, INC., MOTT'S, LLP, and GENERAL MILLS, INC.,<br><br>       Defendants. | Case No. 2:17-cv-01875<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>JUDGE:<br>HON. MICHAEL W. FITZGERALD<br><br>DATE:    June 5, 2017<br>TIME:    10:00 A.M.<br>LOCATION: Courtroom 5A<br>     350 West First Street<br>     Los Angeles CA 90012 |

1

# TABLE OF CONTENTS

2

3

I.    INTRODUCTION ....................................................................... 1

II.   STATEMENT OF FACTS ........................................................... 3

III.  LEGAL STANDARD ................................................................. 4

IV.   ARGUMENT .............................................................................. 4

      A.   The Fruit Snacks' Labels are Misleading to Reasonable
           Consumers. ........................................................................ 4

      B.   Plaintiff's UCL "Unlawful" Claim Survives Because
           Plaintiff Adequately Alleges that the Fruit Snacks are
           Misbranded. ....................................................................... 9

      C.   Plaintiff Adequately States A Claim For Breach of Express
           Warranty ........................................................................... 10

      D.   Plaintiff Adequately Alleges a Quasi Contract Claim
           Because Defendants Have Been Unjustly Enriched. ............ 12

      E.   Plaintiff Has Standing to Request Injunctive Relief ............ 14

      F.   Plaintiff Relied Claims Substantially Similar to Those
           Made on the Internet.......................................................... 16

      G.   Plaintiff Should Be Granted Leave to Amend the Complaint ............. 17

CONCLUSION ................................................................................. 18

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Target*, No. CV 13-5944-GHK (PJWx), 2014 U.S. Dist. LEXIS 151154 (C.D. Cal. Mar. 3, 2014) ................................................................ 15

*All World Professional Travel Services Inc. v. American Airlines, Inc.*, 282 F. Supp. 2d 1161 (C.D. Cal. 2003) .................................................. 14

*also Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th 115 (Cal. App. 2007) ............................................................................ 12

*Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-cv-02172-JSW, 2016 U.S. Dist. LEXIS 100504 (N.D. Cal. Aug. 1, 2016) ...................... 17

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014) ............................................. 17

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 13

*Atik, et al. v. Welch Foods, Inc., et al.*, No. 15-cv-5405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016) ........................... 6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .............................. 4

*Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365 (N.D. Cal. 2010) ........ 18

*Coe v. Gen. Mills, Inc.*, No. 15-cv-05112-TEH, 2017 U.S. Dist. LEXIS 16581 (N.D. Cal. Feb. 6, 2017) ................................................... 16

*Colucci v. ZonePerfect Nutrition Co*., No. 12-2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .................................................. 17

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) .................................. 5

*Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist. LEXIS 41650 (N.D. Cal. Mar. 28, 2016) ..................................... 16

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ................................... 8

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................. 4

*Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069 (Cal. App. 1998) ........... 11

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) ......................................... 13

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ... 10

*Hernandez v. Lopez*, 180 Cal. App. 4th 932 (2009) ................................. 13

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732 (C.D. Cal. Sep. 4, 2014) ... 16

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir.1982) ............... 18

*Lance Camper Mfg. v. Republic Indemnity of Am.*, 44 Cal. App. 4th 194 (1996) ..... 14

*Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th 115 (Cal. App. 2007) .. 5

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............. 5

*Molsbergen v. United States*, No. 84-1626, 1985 U.S. App. LEXIS 31271 (9th Cir. May 15, 1985) ...................................................... 14

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013) ..................... 13

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011) ..................... 5

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1070 (S.D. Cal. 2011) ........ 5

*Podobedov v. Living Essentials, LLC*, No. CV 11-6408, 2012 WL 2513458 (C.D. Cal. Mar. 22, 2012) ................................................. 11

*Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................................................................... 6

*Romero v. Flowers Bakeries, LLC*, No. 14-CV-5189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ........................................................ 7

Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221 (Ct. App. 2014) ...................................................................... 13

*Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014) ... 14

*Swanson v. U.S. Forest Serv.*, 87 F.3d 339 (9th Cir. 1996) ....................... 18

*Trazo v. Nestle USA, Inc.*, 2015 WL 4196973 (N.D. Cal. July 10, 2015)................. 13

*U.S. v. Webb*, 655 F.2d 977 (9th Cir. 1981)................................................................ 18

*Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213 (Cal. App. 1st Dist. 2010)
........................................................................................................................................ 11

*Williams v. Gerber Prods. Co.*,  552 F.3d 934 (9th Cir. 2008) ........................... passim

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ............................ 5

*Wyler Summit Pshp. v. Turner Broad. Sys.*, 135 F.3d 658 (9th Cir. 1998) ................. 4

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) ...................... 5

**Statutes**

21 C.F.R. § 102.5(b) ................................................................................................. 11

459 U.S. 810 (1982)................................................................................................... 21

Cal. Bus. & Prof. Code § 17200 ................................................................................. 7

Cal. Civ. Code § 1770 ............................................................................................. 6, 7

**Other Authorities**

Compl ................................................................................................................. passim

Def. Memo .......................................................................................................... passim

**Rules**

Cal. Com. Code § 2313.............................................................................................. 13

Fed. R. Civ. P. 15(a) (l)-(2)....................................................................................... 22

Fed. R. Civ. P. 8(a)............................................................................................... 6, 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **I.      INTRODUCTION**

2        Defendants Dr Pepper Snapple Group, Inc., Mott's LLP, and General Mills, Inc.

3   (collectively, "Defendants") have engaged in a widespread and uniform marketing

4   campaign to convince consumers that Mott's Fruit Snacks (the "Fruit Snacks") are

5   nutritious and healthful and contain significant amounts of the prominently named

6   and/or depicted fruits and are nutritious and healthful to consume.

7        Defendants have capitalized on the trusted "Mott's" brand, which consumers

8   associate with healthful products such as 100% fruit juice and apples, to market an

9   illegally-fortified sugary junk food. Compl. at ¶¶ 30-33. When consumers see a trusted

10   brand like Mott's, combined with labels that promote colorful images of whole fruits

11   and vegetables, along with various claims regarding vitamins and other health

12   attributes, it's a recipe for deception. *Id.* at ¶¶ 33, 39.

13        Defendants' marketing and packaging of the Fruit Snacks takes advantage of the

14   increased consumer demand for healthful foods. *Id.* at ¶¶ 27-29. Parents are

15   increasingly seeking more nutritious snacks for their families. *Id.* It is especially

16   troubling that these fruit snacks are aimed at children, who love anything sweet. *Id.* at

17   ¶ 3. Defendants make and market products that contain minimal amounts of fruit-like

18   substances, fortify them with artificial vitamins, and then proclaim the resulting candy

19   to be nutritious. *Id.* at ¶¶ 6-8. Real fruits and vegetables need neither processing nor

20   the addition of artificial vitamins to be healthful. *Id.* at ¶ 48. This is the sort of deception

21   we have laws to protect against.

22        Contrary to Defendants' marketing and packaging, the Fruit Snacks contain only

23   minimal amounts (if any) of the prominently depicted fruits and vegetables, in

24   processed form. Id. at ¶ 6. In fact, three of the first four ingredients are added

25   sweeteners: corn syrup, sugar, and modified corn starch. *Id*. In the case of some fruit

26   snack varieties, the Fruit Snacks do not contain ***any*** amount of the fruit named on the

27

28

1  front of the label. *Id.* at ¶ 41. In essence, the Fruit Snacks are no more healthful than
2  candy. *Id.* at ¶ 6.

3      In an effort to avoid having to defend their labeling claims, Defendants make
4  several arguments, all of which are unavailing.

5      ***First***, Defendants argue that no reasonable consumer could possibly be misled
6  into thinking that the Fruit Snacks contain significant amounts of the fruits and
7  vegetables advertised. However, that is exactly what the Fruit Snacks' packages and
8  marketing are designed to convey. Courts faced with claims involving similar
9  representations on food labeling—including on fruit snack labeling—have held that
10 such labels may mislead reasonable consumers.

11     ***Second***, Defendants argue that Plaintiff's "unlawful" labeling claim under the
12 UCL must fail as Defendants did not violate FDA regulations requiring the disclosure
13 of percentages of characterizing ingredients. In making this argument, Defendants
14 improperly conflate the "reasonable consumer" standard with the FDA's "erroneous
15 impression" standard. In fact, Defendants' labeling of the Fruit Snacks creates the risk
16 of an erroneous impression of the amount of fruit and vegetables in the products and,
17 lacking a disclaimer, is thus in violation of FDA regulations. Plaintiff's claim that the
18 labeling is "unlawful" under the UCL therefore stands.

19     ***Third***, Defendants argue that Plaintiff fails to allege any false affirmations of
20 fact to support his breach of express warranty claim. As explained below, this is simply
21 not true. Plaintiff has alleged more than enough false affirmations to survive at the
22 motion to dismiss stage.

23     ***Fourth***, Defendants make various arguments that Plaintiff fails to state an unjust
24 enrichment claim. Each of these arguments is unavailing. The Ninth Circuit allows
25 unjust enrichment claims to proceed as quasi-contract claims for restitution. It is well-
26 established that a plaintiff may plead an unjust enrichment claim in the alternative to
27 an express warranty claim.

28

1    ***Fifth***, Defendants argue that, because Plaintiff now realizes that he was tricked,

2    he no longer has standing to sue for injunctive relief. Plaintiff has alleged that he would

3    purchase the Fruit Snacks again if they conformed to the labeling and marketing

4    representations in the future. Presently, the courts in this Circuit are split on whether a

5    plaintiff can recover injunctive relief in such a situation.

6    ***Sixth***, Defendants argue that Plaintiff has not alleged reliance on Defendants'

7    online-marketing representations. This argument misses the point. As explained below,

8    Plaintiff has adequately alleged reliance on marketing materials that are substantially

9    similar to the online representations relied upon by absent class members.

10   As all of Defendants' arguments are unavailing, their motion to dismiss should

11   be denied.

12   ## II.   STATEMENT OF FACTS

13   Plaintiff's Complaint alleges facts that, at this state, must be assumed to be true.

14   *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). Defendants sell

15   a line of products called "Mott's Fruit Snacks" (Compl. at ¶ 1), which they market and

16   label to create the impression that the Fruit Snacks contain significant amounts of

17   certain fruits and vegetables, and that the Fruit Snacks are healthy and nutritious.

18   Compl. at ¶¶ 2-4, 10. Consumers rely on Defendants' representations and, on that basis,

19   choose to purchase and pay a premium for the Fruit Snacks. *Id.* at ¶¶ 5, 9, 16, 39. But

20   contrary to the impression that Defendants intentionally create, the Fruit Snacks are no

21   healthier than candy. *Id*. at ¶ 52. Instead, the Fruit Snacks mostly consist of corn syrup,

22   sugar, and modified corn starch, with some juice from concentrate. *Id.* at ¶ 6. In some

23   instances, the Fruit Snacks do not contain ***any*** amount of the fruit after which the fruit

24   named on the label.[1] *Id.* at ¶ 41.

25   _____

26   [1] While Defendants are correct to point out that the "Strawberry Apple" Fruit Snacks—the example mistakenly used by Plaintiff in his Complaint—do contain traces of strawberry, this does not change the fact that some varieties of the Fruit

27   Snacks ***do not*** contain the advertised fruits. For instance, "Strawberry Splash Fruit Rolls" contain ***no*** strawberry (Sipos Decl., Ex. A-1), and at least one of the "Berry"

28

1    Through their marketing, Defendants have deceived consumers into buying the
2    Fruit Snacks, and into paying a price premium for them. *Id.* at ¶ 98. Plaintiff wished to
3    purchase healthful snacks for himself and his family. *Id.* at ¶ 19. He relied on
4    Defendants' representations and purchased several boxes of the Fruit Snacks. *Id.* at ¶¶
5    19-20.

6    Plaintiff seeks to represent a statewide class of consumers who purchased Fruit
7    Snacks in California during the applicable class period. *Id.* at ¶¶ 2, 59. On behalf of the
8    class, Plaintiff brings claims for violation of California's Consumer Legal Remedies
9    Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law
10   ("FAL"), as well as for breach of express warranty, and for unjust enrichment.

11                        **III.   LEGAL STANDARD**

12   In ruling on a motion to dismiss, all allegations in the complaint must be "taken
13   as true and construed in the light most favorable to the plaintiff." *Williams*, 552 F.3d
14   at 937; *see also Wyler Summit Pshp. v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir.
15   1998). While the plaintiff must plead more than mere "labels and conclusions," the
16   complaint must include "only enough facts to state a claim to relief that is plausible on
17   its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Fed. R. Civ. P.
18   8(a)(2) only requires a "short and plain statement of the claim showing that the pleader
19   is entitled to relief." A plaintiff need only allege facts to put the defendant on notice of
20   the claim and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93
21   (2007). A well-pleaded complaint may proceed even if it appears "that a recovery is
22   very remote and unlikely." *Bell Atl. Corp.*, 550 U.S. at 556.

23                        **IV.   ARGUMENT**

24   **A.    The Fruit Snacks' Labels are Misleading to Reasonable Consumers**.

25   California's consumer protection laws prohibit "not only advertising which is
26   false, but also advertising which[,] although true, is either actually misleading or which

27   _____
28   formulations that Defendants concede was in circulation during the relevant time
     period contains ***no*** traces of any kind of berry (Sipos Decl., Ex. A-5).

                                         4

1    has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v.*
2    *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted).
3    "[C]onduct is deceptive or misleading if it is likely to deceive an ordinary consumer,"[2]
4    or a "consumer acting reasonably under the circumstances" who "is not versed in the
5    art of inspecting and judging a product." *Peviani v. Natural Balance, Inc.*, 774 F. Supp.
6    2d 1066, 1070 (S.D. Cal. 2011); *see also* Cal. Bus. & Prof. Code § 17200; *id.* § 17500;
7    Cal. Civ. Code § 1770. This is an objective standard, made by examining "the
8    deceptive context of the packaging as a whole." *Yumul v. Smart Balance, Inc.*, 733 F.
9    Supp. 2d 1117, 1128-29 (C.D. Cal. 2010); *see also Williams*, 552 F.3d at 939; *Miller*
10   *v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012). Whether a
11   business practice is deceptive is usually a question of ***fact***, and thus it is a "rare situation
12   in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 938-39;
13   *see also Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th 115, 134 (Cal.
14   App. 2007).

15       A reasonable consumer—upon seeing labels and marketing materials (1)
16   dominated by images of whole fruit, (2) alongside "Made With Real FRUIT" graphics,
17   (3) with the word "FRUIT" prominently displayed, (4) paired with claims that the
18   product will provide significant amounts of nutrients—would be misled into thinking
19   that the Fruit Snacks contained significant amounts of real fruit. (*E.g.*, Compl. at ¶ 39).

20       Despite Defendants' attempts to obscure the issues in this case, the Ninth
21   Circuit's decision in *Williams v. Gerber* remains on point. In that case, the court
22   recognized that statements do not need to be *technically false* in order to be *deceptive*
23   or *misleading*. *Williams*, 552 F.3d at 938. None of the cases relied upon by Defendants
24   do anything to erase this key distinction.

25

26   _____

[2] *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1070 (S.D. Cal. 2011); *see*
27   *also* Cal. Bus. & Prof. Code § 17200; *id.* § 17500; Cal. Civ. Code § 1770; *Delgado v.*
     *Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y.
28   Sept. 24, 2014); *Ackerman*, 2010 WL 2925955, at *15-17.

1    Indeed, the applicability of many of Defendants' cited cases to the present
2  context has already been rejected in a similar case concerning fruit snacks. In *Atik, et*
3  *al. v. Welch Foods, Inc.,* a case also involving UCL, FAL, and CLRA claims of false
4  advertising on fruit snack labels, the Eastern District of New York held that it was
5  plausible that reasonable consumers could be misled by fruit snack labels including
6  prominent depictions of fruit and statements that the products were "made with real
7  fruit." *Atik, et al. v. Welch Foods, Inc., et al.*, No. 15-cv-5405, 2016 U.S. Dist. LEXIS
8  136056, at *31 (E.D.N.Y. Sept. 30, 2016). In doing so, the court explicitly
9  distinguished the holdings in cases like *Red v. Kraft Foods, Inc.*, *Romero v. Flower*
10 *Bakeries, LLC*, and *Manchouck v. Mondelez Int'l Inc.*—all of which are relied upon by
11 Defendants in the present case. Here, as in *Atik*, Defendants' reliance on these cases is
12 misplaced.

13   In *Red v. Kraft Foods, Inc.*, for instance, the products at issue were crackers
14 labeled as "made with real vegetables." No. 10-CV-1028, 2012 WL 5504011, at *3
15 (C.D. Cal. Oct. 25, 2012). The plaintiffs in that case alleged that the labeling of the
16 crackers misled them into believing that the crackers contained a significant amount of
17 vegetables. *Id.* As referenced in Defendants' brief, the court dismissed this claim
18 because "a reasonable consumer will be familiar with the fact of life that a cracker is
19 not composed of primarily fresh vegetables." *Id.* However, as the *Atik* court explained,
20 the claims in *Red* are entirely distinguishable from those concerning fruit-snack
21 labeling. While no reasonable consumer would conclude that crackers would be
22 primarily made of vegetables, "a reasonable consumer could expect a fruit snack to
23 contain a significant amount of fruit, especially where, as here, the packaging and
24 labeling emphasize the presence of fruit in the Fruit Snacks." *Atik*, 2016 U.S. Dist.
25 LEXIS 136056, at *33. Crackers and fruit snacks are fundamentally different products,
26 and come with fundamentally different expectations from consumers.
27
28

1          Similarly, the *Atik* court found the holding in *Romero v. Flowers Bakeries, LLC*,
2    No. 14-CV-5189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)—a case concerning
3    bread—to be inapplicable to a case involving "made with real fruit" fruit-snack
4    labeling. *Atik*, 2016 U.S. Dist. LEXIS 136056, at *35-36. In *Romero*, the plaintiff
5    alleged that the labeling of bread with the word "wheat" and representations of wheat
6    shafts misled him into thinking that the bread was made of "whole wheat" and was
7    "healthier than other white breads." *Romero*, 2016 WL 469370, at *6-7. Such an
8    allegation relies on a consumer's assumption that the product contained a ***specific type***
9    of wheat—despite that type of wheat not being advertised. *Atik*, 2016 U.S. Dist. LEXIS
10   136056, at *36. As the *Atik* court recognized, this is plainly distinguishable from
11   allegations simply involving the ***amount*** of fruit in fruit snacks labeled with "made
12   with real fruit" claims. *Id.* Here, as in *Atik*, Plaintiff "do[es] not assume from the Fruit
13   Snacks' labeling and marketing that the Fruit Snacks contain a type of fruit that is not
14   plainly advertised on the packaging," but instead allege that "a reasonable consumer
15   could be deceived into thinking that the Fruit Snacks contain significant amounts of
16   real fruit." *Id.* In citing to *Romero*, Defendants conveniently ignore this distinction
17   between ***type*** and ***amount***, misleadingly using the decision to support the false
18   proposition that allegations concerning the ***amount*** of an ingredient can never satisfy
19   the reasonable consumer standard. (Def. Memo. at 9). That proposition has already
20   been roundly rejected in the context of "made with real fruit" fruit-snack labeling. *See,*
21   *e.g.*, *id.*

22          Further, Plaintiff's allegations that Defendants' marketing is misleading as to
23   the amount of fruit in the Fruit Snacks must be understood in the context of the Fruit
24   Snacks' packaging as a whole. Plaintiff does not allege that it is solely the images of
25   fruit or "made with real fruit" statements that misleadingly suggest the presence of a
26   significant amount of fruit in the Fruit Snacks. Rather, Plaintiff alleges that this
27   impression is bolstered by additional statements regarding the healthfulness of the Fruit
28

1  Snacks, such as "100% Daily Value Vitamin C." (Compl. at ¶35). Taken together in
2  context, these various representations create the misleading impression that the Fruit
3  Snacks have health benefits deriving from the presence of significant amounts of real
4  fruit, when the Fruit Snacks contain mostly fillers and sweeteners, and the Vitamin C
5  derives not from fruit, but from added ascorbic acid. (Compl. at ¶41). To distract from
6  these allegations, Defendants attempt to isolate cherry-picked examples of marketing
7  and packaging in order to argue that reasonable consumers are not misled due to the
8  individual marketing statements being technically true in isolation. This approach
9  ignores the mandate to examine "the deceptive context of the packaging as a whole,"
10  *Yumul*, 733 F. Supp. 2d at 1128-29, as well as the longstanding recognition that
11  statements can be misleading in context even when technically true in isolation. *See*
12  *Williams*, 552 F.3d at 938.

13       But even if the Court were to follow Defendants' novel approach of looking at
14  a single statement and ignoring the rest of the packaging, courts that have specifically
15  examined "made with real fruit" claims have found them likely to mislead reasonable
16  consumers. *See Williams*, 552 F.3d at 939; *Atik*, 2016 U.S. Dist. LEXIS 136056, at
17  *31.

18       In arguing that the Ninth Circuit has held that *Williams* is inapplicable where
19  there is no "affirmative misrepresentation," Defendants entirely misstate the holding
20  of *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016). As quoted by Defendants, the
21  Ninth Circuit in *Ebner* held that "*Williams* stands for the proposition that *if* the
22  defendant commits an act of deception, the presence of fine print revealing the truth is
23  insufficient to dispel that deception." 838 F.3d at 966 (emphasis in original). ***Nowhere***
24  does the court state that the "act of deception" must be an "affirmative
25  misrepresentation." Defendants appear to have invented this reading of *Ebner* from
26  whole cloth. While the defendant in *Williams* may have made affirmative
27  representations, "nothing in *Williams* suggests that the court's decision hinged" on this.
28

1  *Atik*, 2016 U.S. Dist. LEXIS 136056, at *29 n.10. Indeed, the court in *Williams*

2  characterized the representations at issue in that case not as affirmative

3  misrepresentations, but as "potentially suggest[ing]," when viewed in context, a

4  misleading impression among consumers. *See id.* This type of suggestive "act of

5  deception" is perfectly consistent with *Ebner*.

6       Plaintiff has alleged more than enough facts to show that reasonable consumers

7  are likely to be misled. Further examination of whether Defendants' practices mislead

8  reasonable consumers is a question of fact that requires consideration and weighing of

9  evidence from both sides, which is inappropriate at this stage.

10 **B.   Plaintiff's UCL "Unlawful" Claim Survives Because Plaintiff Adequately**

11      **Alleges that the Fruit Snacks are Misbranded.**

12      Defendants' conclusory arguments that Plaintiff's UCL "unlawful" claim should

13 be dismissed constitute nothing more than the barest rehashing of their arguments

14 regarding the "reasonable consumer" standard. *See* Section II.A, *supra*.

15      FDA regulations require that the percentage of a "characterizing ingredient" be

16 displayed "when the labeling or the appearance of the food may otherwise create an

17 erroneous impression that such ingredient(s) or component(s) is present in an amount

18 greater than is actually the case." 21 C.F.R. § 102.5(b). Plaintiff plausibly alleges that

19 the labeling of the Fruit Snacks creates the "erroneous impression" that fruit is present

20 in the Fruit Snacks in an amount greater than is actually the case. (Compl. at ¶10). As

21 previously discussed, courts have held that similar representations on fruit-snack

22 labeling may create a false impression of more significant fruit content. *See Williams*,

23 552 F.3d at 939; *Atik*, 2016 U.S. Dist. LEXIS 136056, at *31. Whether the

24 representations on the Fruit Snacks' labels actually create such an erroneous

25 impression in this instance is a question of fact. It would be premature to dismiss

26 Plaintiff's UCL "unlawful" claim based solely on Defendants' conclusory assertion

27

28

1   that "[n]either the product's name, nor the depictions of fruit on the label, create an

2   'erroneous impression.'" (Def. Memo. at 14).

3          FDA regulations also require the percentage of "characterizing ingredients" to

4   be listed "when the proportion of such ingredient(s) or component(s) in the food has a

5   material bearing on price or consumer acceptance." 21 C.F.R. § 102.5(b). Plaintiff has

6   plausibly alleged that the amount of fruits that is in fruit snacks has a material bearing

7   on whether consumers buy the Fruit Snacks, and on how much consumers are willing

8   to pay for the Fruit Snacks. (Compl. at ¶ 9). Thus, even if the Fruit Snacks' labeling

9   did not create an "erroneous impression," Defendants would still have been required

10  to disclose the percentage of fruit in the Fruit Snacks in the Fruit Snacks' statement of

11  identity. Because Defendants failed to do this, Plaintiff has adequately alleged that the

12  Fruit Snacks' labels violate 21 C.F.R. § 102.5(b), and are thus unlawful within the

13  meaning of the UCL. Defendants do not address or contest this basis for Plaintiff's

14  UCL "unlawful" claim.

15         Finally, Plaintiff does not allege a "bare technical violation" of the FDA

16  regulations. (*See* Def. Memo. at 15). As explained in Section II.A, *supra*, Plaintiff has

17  alleged adequate facts to meet the reasonable consumer standard. Plaintiff's UCL

18  "unlawful" claim is therefore actionable.

19  **C.    Plaintiff Adequately States A Claim For Breach of Express Warranty**

20         To state a breach of express warranty claim, a plaintiff must allege facts

21  sufficient to show that (1) the seller's statements constitute an affirmation of fact or

22  promise or a description of the goods, (2) the statement was part of the basis of the

23  bargain, and (3) the warranty was breached. *Ham v. Hain Celestial Grp., Inc.*, 70 F.

24  Supp. 3d 1188, 1195 (N.D. Cal. 2014). *See also Podobedov v. Living Essentials, LLC*,

25  No. CV 11-6408, 2012 WL 2513458, at *4 (C.D. Cal. Mar. 22, 2012). Plaintiff has

26  done so.

27

28

10

1    Defendants argue that Plaintiff has failed to allege any affirmation of fact that is
2  false and therefore cannot assert an express warranty claim under California law. Defs.
3  Mem. at 15-16. This is not true. First, Defendants' view is too narrow and
4  determination of the validity of the statement is not appropriate at this time. An express
5  warranty is "any affirmation of fact or promise made by the seller to the buyer which
6  relates to the goods and becomes part of the basis of the bargain[.]" *Weinstat v.*
7  *Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. App. 1st Dist. 2010) (quoting
8  Cal. Com. Code § 2313). "Whether a statement is nonactionable opinion or actionable
9  misrepresentation of fact is a question of fact for the jury." *Furla v. Jon Douglas Co.*,
10 65 Cal. App. 4th 1069, 1081 (Cal. App. 1998)

11    In this case, Plaintiff alleges that the Mott's Medley's Fruit Flavored Snacks,
12 Assorted Fruits variety, for example, are marketed and labeled as being "Made with
13 Real Fruit" and "Made with Real Fruit & Veggie Juice" and are nutritious, and
14 healthful to consume because they are a 'perfect after-school snack that's a win for you
15 and your kids" and "a tasty treat you can feel good about!" Compl. at ¶¶ 3, 5, 16, 18–
16 19, 69. Plaintiff also alleges that these material affirmations were part of the basis of
17 the bargain formed when Plaintiff bought the Fruit Snacks. Compl. at ¶¶ 9, 15-16, 39,
18 69-71. These material affirmations and promises refer to the production of the Fruit
19 Snacks and that the contents of the Fruit Snacks include the fruits and vegetables
20 promised on the label. It strains credulity that a jury could not find material affirmations
21 in this context.

22    Finally, Plaintiff also alleges that this material affirmation is false. Compl. at
23 ¶¶ 6-8, 11-14, 41-50, 53-58, 70-71. There are some fruit juices in the Fruit Snacks, but
24 the Fruit Snacks are not the healthful, fruit and vegetable product they purport to be.
25 In fact, no form of fruit makes any appearance on the Fruit Snacks' ingredients list
26 until after the ingredients corn syrup, sugar, and modified corn starch, and then only in
27 a processed, concentrated form.

28

1    But even if the Court were to follow Defendants' novel approach of looking at

2   a single statement and ignoring the rest of the packaging, courts that have specifically

3   examined "Made With Real Fruit" claims have found them to be deceptive.[3] *E.g.*,

4   *Williams* at 939. Plaintiff has alleged more than enough facts to show that reasonable

5   consumers are likely to be deceived by Defendants' representations about the Fruit

6   Snacks. Further examination of how Defendants' practices may mislead reasonable

7   consumers is a question of fact that requires consideration and weighing of evidence

8   from both sides, which is inappropriate at the motion to dismiss stage. *Williams*, 552

9   F.3d at 938-39; *see also Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th

10  115, 134 (Cal. App. 2007); *In re Frito-Lay*, 2013 WL 4647512, at *13 ("[W]hat a

11  reasonable consumer would believe raises a factual dispute that cannot properly be

12  resolved on a motion to dismiss.").

13  **D.   Plaintiff Adequately Alleges a Quasi Contract Claim Because Defendants**

14       **Have Been Unjustly Enriched.**

15       In California, there is not a standalone cause of action for "unjust enrichment."

16  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However,

17  when a plaintiff alleges unjust enrichment, "a court may construe the cause of action

18

19  ───────────

    [3] Additionally, the cases Defendants cite are inapplicable here because the facts alleged in this case are markedly different than from the examples Defendants

20  provide. In *Henderson*, 2011 WL 1362188, the representation at issue was "with garden vegetables." All this phrase tells consumers is that there are some vegetables

21  in the product. If Defendants here had claimed "contains fruit and vegetable juice" there would be no issue in the way they represent their products. Instead, Defendants

22  represent that the fruit and vegetable juice is used in such a way or else is found in large enough quantities to "make" the products. In *Viggiano v. Hansen Nat. Corp.*,

23  944 F. Supp. 2d 877 (C.D. Cal. 2013), the claim at issue was "all natural flavors." Unlike in this case where the affirmative representation refers to what the Products

24  made of or how the Products are made, this is merely a general description of products at issue and at least some of their ingredients. Finally, in *McKinnis v.*

25  *Kellogg USA*, 2007 WL 4766060, the product at issue was a sweetened cereal that was represented as a fanciful "Froot" and contained fruit flavors. By contrast, the

26  Products in this case are chewy, sweet fruit-flavored snacks represented to be made with real fruit and vegetable juices and are likely to be found in stores next to "fruit

27  leather" and other chewy, sweet fruit-flavored snacks made with real, actual fruit—and nothing else.

28

                                    12

1   as a quasi-contract claim seeking restitution." *Id.* (*quoting* Rutherford Holdings, LLC

2   v. Plaza Del Rey, 223 Cal. App. 4th 221 (Ct. App. 2014))*; see also Trazo v. Nestle*

3   *USA, Inc.*, 2015 WL 4196973, at *2 (N.D. Cal. July 10, 2015). Additionally, the

4   Supreme Court of California and California Courts of Appeal have also recognized

5   actions for relief under the equitable doctrine of unjust enrichment *See Naoko Ohno v.*

6   *Yuko Yasuma*, 723 F.3d 984, 1006 (9th Cir. 2013) (citing *Ghirardo v. Antonioli*, 14

7   Cal. 4th 39 (1996)). Defendants' motion for dismissal of this claim should be denied.

8       A plaintiff can recover restitution based on quasi-contract/unjust enrichment

9   when, in the absence of a formal contract, the plaintiff conferred a benefit on the

10  defendant which the defendant knowingly accepted under circumstances that make it

11  inequitable for the defendant to retain the benefit without paying for its value.

12  *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009). Plaintiff properly alleges a

13  quasi-contract claim. Because of Defendants' misrepresentations, Plaintiff and class

14  members were deceived into buying the Fruit Snacks, thus conferring a benefit on

15  Defendants, which Defendants knowingly accepted. Compl. at ¶¶ 3-17, 20, 34-48, 72-

16  76. Because Plaintiff and members of the class would not have purchased the Fruit

17  Snacks or would not have paid the price they did for the Fruit Snacks absent

18  Defendants' misrepresentations it would be inequitable for Defendants to retain the

19  benefit Plaintiff and class members conferred upon them in reliance upon Defendants'

20  misrepresentation. Compl. at ¶¶ 20, 54, 72-76.

21      Defendants' argument that Plaintiff cannot allege a quasi-contract claim because

22  Plaintiff also alleges a breach of express warranty claim is nonsensical. "The Federal

23  Rules of Civil Procedure . . . explicitly authorize litigants to present alternative and

24  inconsistent pleadings." *Molsbergen v. United States*, No. 84-1626, 1985 U.S. App.

25  LEXIS 31271, at *5 (9th Cir. May 15, 1985). "Pursuant to Rule 8(e)(2), '[a] party may

26  set forth two or more statements of a claim or defense alternatively or

27  hypothetically.' . . . '[a] party may also state as many separate claims or defenses as he

28

1   has regardless of consistency.'" *Id.*; Fed. R. Civ. P. 8(a) ("relief in the alternative or of

2   several different types may be demanded"). As such, plaintiffs routinely allege causes

3   of action for breach of warranty, on one hand, and unjust enrichment or other equitable

4   remedies, on the other. *See, e.g.*, *All World Professional Travel Services Inc. v.*

5   *American Airlines, Inc*., 282 F. Supp. 2d 1161, 1165 (C.D. Cal. 2003) (plaintiff alleged

6   breach of contract and unjust enrichment). The cases relied on by Defendants presented

7   factual scenarios that involved valid written contracts much different than the typical

8   consumer sale. *See Lance Camper Mfg. v. Republic Indemnity of Am.*, 44 Cal. App. 4th

9   194 (1996) (involving purchased workers' compensation and employer's liability

10  insurance from Republic Indemnity Company of America); *Segura v. Wells Fargo*

11  *Bank, N.A.*, 2014 WL 4798890, at *11 (C.D. Cal. Sept. 26, 2014) (Fitzgerald, J.)

12  (involving a "foreclosure and sale under a Deed of Trust, and under an alleged

13  insurance contract pursuant that provided coverage to Wells Fargo.") In the cases cited

14  by Defendants, the existence of an actual contract between the parties was never in

15  serious doubt. Plaintiff may prosecute both claims until it can be determined on which

16  one he may recover.

17  **E.    Plaintiff Has Standing to Request Injunctive Relief**

18          According to Defendants, because Plaintiff is now aware of Defendants'

19  misleading and deceptive practices, he lacks standing to pursue injunctive relief. Defs.

20  Mem. at 18. While it is true that Plaintiff is now aware of Defendants' deceptive

21  practices, Defendants' ongoing misrepresentation of the Fruit Snacks and Plaintiff's

22  desire to buy the Fruit Snacks again in the future gives him standing to pursue

23  injunctive relief. While Plaintiff recognizes that this Court has previously ruled to the

24  contrary, and that he thus has an uphill battle, Plaintiff raises this argument in the

25  interest of preserving his rights to judicial review.

26          Courts have held that if a Plaintiff "allege[s] that he intends to purchase the

27  products at issue in the future[,]" then has standing to seek injunctive relief. *Rahman*

28

14

1   *v. Mott's Ltd. Liab. P'ship*, No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 11767, at \*35

2   (N.D. Cal. Jan. 29, 2014); *see also Adams v. Target, No. CV 13-5944-GHK (PJWx),*

3   *2014 U.S. Dist. LEXIS 151154, at \*5 (C.D. Cal. Mar. 3, 2014)*. Plaintiff has alleged

4   his desire to buy the Fruit Snacks again. Compl. at ¶ 20. Although the court in *In re 5-*

5   *hour ENERGY* ultimately ruled against standing, it noted the analysis would have been

6   different *if* the plaintiffs had indicated any interest in purchasing the 5-hour ENERGY

7   products again in the future:

8

9
10   In the absence of any binding authority governing this issue, the district
    courts in this Circuit have split into three camps. Many courts have
11   rejected Defendants' position on policy grounds. For example,
    in *Henderson v. Gruma Corp.*, a leading case for this point of view, the
12   court reasoned: 'If the Court were to construe Article III standing for
    FAL and UCL claims as narrowly as the Defendant advocates, federal
13   courts would be precluded from enjoining false advertising under
    California consumer protection laws . . . .'
14   A second group of courts have taken a middle approach, reasoning that
15   plaintiffs who are aware of defendants' misrepresentations can still be
    harmed if those misrepresentations continue, because the plaintiffs
16   cannot rely on defendants' representations. . . . Courts have only taken
    this approach when plaintiffs have indicated that they are interested in
17   purchasing the products-in-suit in the future. . . . A third group of courts
    have concluded—often with some reluctance—that "a public policy
18   exception . . . does not square with Article III's mandate." . . . Those
19   courts have held that plaintiffs who know the truth about allegedly
    deceptive claims lack standing to bring suit for injunctive relief.
20
    The middle-path analysis articulated in *Ries* is not applicable here,
21   because Plaintiffs have not indicated that have any interest in
    purchasing 5-hour ENERGY in the future. . . . However, because
22   Plaintiffs may allege that they are interested in purchasing 5-hour
    ENERGY in the future, Plaintiffs are granted leave to amend.
23

24

25
    *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx),
26
    2014 U.S. Dist. LEXIS 149732, at \*26-30 (C.D. Cal. Sep. 4, 2014) *(internal citations*
27
    *omitted)*. Here, Plaintiff has alleged that he does intend to purchase Defendants' Fruit
28

1   Snacks in the future. Compl. at ¶ 20, ("In the future, if Mr. Chuang knew that the
2   Products had been changed to conform to the representations on their labels, e.g., that
3   the Products actually were as depicted and represented, he would continue to purchase
4   the Fruit Snacks. At present, however, Mr. Chuang cannot be confident that the
5   marketing and labeling of the Products is, and will be, truthful and non-deceptive.").
6   Defendants claim this means the Plaintiff would not buy the Fruit Snacks again.
7   However, this not what the Plaintiff says. The Complaint reflects the unfortunate
8   reality that unless the labeling and marketing for the Fruit Snacks are changed, or the
9   formula of the Fruit Snacks is changed, there is no way for Plaintiff to know whether
10  the labels and marketing for the Fruit Snacks remain deceptive. Compl. at ¶ 20. This is
11  a common situation, but does not deprive Plaintiff of the ability to seek injunctive
12  relief. *See Coe v. Gen. Mills, Inc.*, No. 15-cv-05112-TEH, 2017 U.S. Dist. LEXIS
13  16581, at *5 (N.D. Cal. Feb. 6, 2017) (In this case . . . there is a "possibility of
14  confusion" to Plaintiffs since it is possible that Defendant will change the composition
15  of [the products] so that it is more appealing to Plaintiffs. This is sufficient to confer
16  standing to seek injunctive relief on plaintiffs . . . who allege "a willingness to consider
17  a future purchase."); *Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist.
18  LEXIS 41650, at *20 (N.D. Cal. Mar. 28, 2016) ("Without injunctive relief, that
19  consumer is harmed, probably because she won't buy it because she will suspect a
20  continuing misrepresentation (even if the manufacturer conforms the product to the
21  label)."); *see also Anderson v. SeaWorld Parks & Entm't, Inc*., No. 15-cv-02172-JSW,
22  2016 U.S. Dist. LEXIS 100504, at *21 (N.D. Cal. Aug. 1, 2016) ("[I]t may be difficult
23  for a plaintiff to plausibly allege facts to show he or she would be deceived in the
24  future, but at the pleadings phase, the Court cannot say it would be impossible.").
25  **F.    Plaintiff Relied on Claims Substantially Similar to Those Made on the**
26         **Internet**
27
28

1    Defendants claim Plaintiff did not rely on the claims made on Defendants'
2   website that the Fruit Snacks are a ". . . tasty treat combines real fruit and vegetable
3   juice with the fruit flavors kids love. You've finally found the perfect after-school
4   snack that's a win for you and your kids," and "Mott's Medleys Assorted Fruit
5   Flavored Snacks are a tasty treat you can feel good about!" Compl. at ¶ 3. These claims
6   on the website are substantially similar to the representations made across all outlets
7   and on the labeling itself—that the Fruit Snacks embody "goodness" and are a
8   nutritious, healthful snack, made with real fruit and vegetable juice. Compl. at ¶¶ 3, 16,
9   32, 34-35, 38, 52. Absent class members who saw and relied upon Defendants' internet
10  advertisements therefore relied upon representations that were substantially the same
11  as those relied upon by Plaintiff. If the relied-upon representations are substantially
12  similar, it does not matter *where* they were seen; Plaintiff can sue on behalf of those
13  class members who relied upon substantially similar represenetations because their
14  injury is the same. *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014
15  U.S. Dist. LEXIS 34443, at *10-29 (N.D. Cal. Mar. 13, 2014) (holding that standing
16  should be treated "more expansively in the class action context" and that claims could
17  proceed for "substantially similar" products other than those bought by named plaintiff
18  so long as the "legal claim and injury to the consumer is the same"); *Colucci v.*
19  *ZonePerfect Nutrition Co*., No. 12-2907, 2012 WL 6737800, at *4-5 (N.D. Cal. Dec.
20  28, 2012) (finding that the presence of substantially similar representations was the
21  "most important[]" factor in deciding to allow claims for products other than those
22  purchased by named Plaintiff); *Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365,
23  378 (N.D. Cal. 2010) (finding standing where named plaintiff's claims were
24  "reasonably co-extensive with those of absent class members" because all had relied
25  upon "substantially the same misrepresentations").
26  **G.    Plaintiff Should Be Granted Leave to Amend the Complaint**
27
28

1    Defendants asks this Court to deny Plaintiff leave to amend the Complaint,
2  arguing that any amendment would be futile to correct insufficiencies in the Complaint.
3  Defs. Mem. at 20. Defendants' motion to dismiss here is based on (purported) pleading
4  deficiencies and not other insurmountable deficiencies such as jurisdictional issues or
5  that the claims are time barred. Whatever pleading deficiencies exist here (and Plaintiff
6  contend there are none) can be cured by additional factual allegations.

7    A party may amend a pleading once as a matter of course or at any time before
8  trial with leave of the court. Fed. R. Civ. P. 15(a) (l)-(2). If sought, "[t]he court should
9  freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court
10  has the discretion to decide whether to grant Plaintiff leave to amend. *See Swanson v.*
11  *U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996); *Jordan v. County of Los Angeles*,
12  669 F.2d 1311, 1324 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810 (1982).
13  In its exercise of this discretion, the court applies Rule 15 to "facilitate [a] decision on
14  the merits, rather than on the pleadings or technicalities." *U.S. v. Webb*, 655 F.2d 977,
15  979 (9th Cir. 1981).

16    Here, amending the pleading would not be futile because, as discussed above,
17  Defendants have misread or misunderstood Plaintiff's allegations. If the Court finds
18  any pleading deficiencies in Plaintiff's Complaint, Plaintiff respectfully requests leave
19  to amend his Complaint.

20
21
22                                **CONCLUSION**
23    For the foregoing reasons, Plaintiff respectfully requests that Defendants'
24  motion be denied. In the alternative, Plaintiff requests leave to amend the Complaint
25  pursuant to Federal Rule of Civil Procedure 15.
26
27
28

1   DATED: August 7, 2017

2                                   Respectfully submitted,

3                                   */s/ Kim E. Richman*

4                                   Kim E. Richman (*Pro Hac Vice* forthcoming)
                                    **RICHMAN LAW GROUP**
5                                   *krichman@richmanlawgroup.com*
                                    Jaimie Mak (Of Counsel)
6                                   81 Prospect Street
                                    Brooklyn, NY 11201
7                                   (718) 705-4579 (office)
                                    (718) 228-8522 (fax)

8                                   **STANLEY LAW GROUP**

9                                   Matthew J. Zevin
                                    Stanley Law Group
10                                  10021 Willow Creek Road, Suite 200
                                    San Diego, California 92131
11                                  (619) 235-5306 (office)
                                    (815) 377-8419 (fax)
12                                  mzevin@aol.com

13                                  Stephen Gardner (*Pro Hac Vice* forthcoming)
                                    Amanda Howell (*Pro Hac Vice* forthcoming)
14                                  *steve@consumerhelper.com*
                                    *ahowell@stanleylawgroup.com*
15                                  6116 N. Central Expressway
                                    Suite 1500
16                                  Dallas, TX 75206
                                    (214) 443-4300 (office)
17                                  (214) 443-0358 (fax)

18                                  *Attorneys for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28